IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
February 3, 2021 Session

**ELIZABETH HARRISON v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Dyer County**
**No. 2018-CR-60     Lee Moore, Judge**

_____

**No. W2019-02117-CCA-R3-PC**
_____


Pursuant to a plea agreement, the Petitioner, Elizabeth Harrison, pled guilty to theft over $1,000 and burglary of a motor vehicle, and the trial court sentenced the Petitioner to eighteen months in Community Corrections for each count. See Tenn. Code Ann. §§ 39-14-103, -402. Subsequently, the Petitioner filed a motion to withdraw her guilty pleas and petition for post-conviction relief, alleging that she received ineffective assistance of counsel. After a hearing, the post-conviction court denied both the motion and the petition. On appeal, the Petitioner argues that she received ineffective assistance of counsel in connection with the pleas. Upon our review, we affirm the judgment of the post-conviction court.


**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**
CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and J. ROSS DYER, JJ., joined.

Charles S. Kelly, Sr., Dyersburg, Tennessee, for the Petitioner, Elizabeth Harrison.

Herbert H. Slatery III, Attorney General and Reporter; Samantha L. Simpson, Assistant Attorney General; Danny Howard Goodman Jr., District Attorney General; and Timothy Boxx, Assistant District Attorney General, for the Appellee, State of Tennessee.


**OPINION**

On April 9, 2018, the Dyer County Grand Jury indicted the Petitioner on one count of theft of property over $1,000. On June 11, 2018, the Dyer County Grand Jury indicted the Petitioner for burglary of a motor vehicle. On July 17, 2018, the trial court issued an order directing forensic evaluation of the Petitioner by a mental health clinic, Pathway Behavioral Health Services. The evaluation found that the Petitioner had a "sufficient

present ability to consult with her attorney with a reasonable degree of rational understanding and a rational as well as a factual understanding of the proceedings against her." Additionally, the evaluation stated that "evidence does not suggest that Ms. Harrison had a mental disease and/or defect that interfered with her ability to form the requisite culpable mental state" required to be convicted of the charges against her."

On December 11, 2018, pursuant to a negotiated plea agreement, the Petitioner pled guilty to both counts, and the State recommended a sentence of eighteen months in Community Corrections for each offense, to be served consecutively.

At the guilty plea hearing, the State gave the court the following summary of the facts underlying the Petitioner's charges:

> On the first one, 18-CR-60, on 3/24/18 Officer Wright of the Newbern Police Department was responding to a stolen vehicle call. Michael Glosier stated he had parked on the alley behind Pete's Place and entered the establishment. As he was walking in [he] said he heard his truck start and being driven down, north on Washington Street.

> Later that day, Officer Danny Tippit of the Newbern police received a tip that the vehicle may be at 1619 Browning here in Dyersburg. Dyersburg police had the defendant detained at that residence[,] and the missing vehicle was recovered by the victim at that time.

> The defendant was read her rights and answered questions. She admitted taking the vehicle in Newbern and driving it to that Browning address.

> On the other case, the burglary, on 2/25/18 [Sergeant] Odell of the Newbern police got a call that a dispatcher was leaving the building to go home and found her passenger door open.

> The next day [Lieutenant] French reviewed surveillance video of the parking lot. The defendant was seen in the video entering the [d]ispatcher Casey Ballinger's vehicle, rummaging through items and opening containers. The defendant then tried to open Rob Hurd's vehicle but, it was locked. The defendant went back to Ballinger's vehicle and opened the passenger door and looked inside and then left the door still open.

The trial court engaged the Petitioner in a series of questions regarding the factual basis of her plea and the rights she would waive by pleading guilty. The Petitioner agreed

that the State's summary of facts was correct. The court then questioned the Petitioner about the performance of her trial attorney.

> COURT: Has [trial counsel] answered all of the questions that you have about the charges pending against you and your plea today?
> PETITIONER: Yes, sir.
> COURT: Has he done everything that you have asked and expected him to do?
> PETITIONER: Yes, sir.
> COURT: Are you satisfied completely with his representation?
> PETITIONER: Yes, sir.

Additionally, the Petitioner acknowledged that no one had promised her anything other than what was announced during the plea hearing and stated her pleas would be entered freely and voluntarily.

After the plea colloquy, the trial court found that the Petitioner was entering a knowing and voluntary guilty plea and accepted the State's recommended sentence of three years in Community Corrections.

Five months later, on May 13, 2019, the Petitioner filed a Motion to Void Guilty Plea. In the motion, the Petitioner claimed that her "mental state did not allow her to make an understandable and rational decision and she did not understand the consequences of her plea." On June 20, 2019, the State filed a response opposing the motion. On August 5, 2019, the Petitioner filed a Petition for Post-Conviction Relief. Nine days later, the Petitioner filed an Amended Petition for Post-Conviction Relief, alleging that she received ineffective assistance of counsel. The Petitioner alleged the following facts regarding the theft of property over $1,000 conviction:

> On March 24, 2018[,] the [P]etitioner went to Coop's pool room and restaurant in Newburn, Tennessee[,] to retrieve a 1993 white GMC pickup truck that Richard Weatherly, Sr., had borrowed from her father, Jeff Harrison, and would not bring it back to him. Jeff made statements to [the Petitioner] that he wanted his 1993 GMC returned by Richard Weatherly and that Weatherly kept promising him he would return it next week but never did.

> On the 24 day of March, 2018[, the Petitioner] obtained information on where her father's truck was located and walked to the pool room, finding the keys in the vehicle, and drove it to one of her father's rental houses on Browning Street in Dyersburg, Tennessee. The only problem was that the

1993 white GMC pickup that she drove from the pool room to her father's rental house belonged to Mike Glozier, not her father.

Mike Glozier's pickup was a 1993 GMC, white in color, with the keys in it. The trucks were both at the pool room, both GMC 1993 year models[,] both white in color, and both having keys in them.

In regards to the burglary of a motor vehicle conviction, the Petitioner alleged the following facts:

The [P]etitioner had been given permission by Rob Burg,[1] another dispatcher working in Newbern that night, to get some chips and cigarettes out of his truck. The [P]etitioner went to the wrong vehicle and after searching for the items, took nothing, then went back to Rob Burg where they were located in the cab of the vehicle, thinking the white Ford pickup truck was his.

The Petitioner claimed that trial counsel was ineffective in failing to interview her father and Mike Glozier, the owner of the truck in the theft charge, and that he "took great effort in persuading her to enter a guilty plea."

On November 4, 2019, the post-conviction court held an evidentiary hearing on both the Motion to Withdraw Guilty Plea and the Petition for Post-Conviction Relief. The court found that the Motion to Withdraw Guilty was time barred. The following proof was adduced regarding the Petition for Post-Conviction Relief.

Trial counsel testified that he was appointed to represent the Petitioner on both charges. In regards to the theft charge, he stated that he became aware of the alleged mix-up of the two trucks from the police report, the Petitioner's father, and the Petitioner sometime before she entered her guilty plea. The Petitioner told trial counsel that she saw the truck, thought it was the truck her father was trying to get back, and took the opportunity to get it back for him. Trial counsel talked to the district attorney about the alleged mistake, and he made it "perfectly clear" that he was still going to prosecute the Petitioner.

Trial counsel testified that he did not recommend that the Petitioner plead guilty to theft over $1,000 and that it was her decision to make. He stated that he had been trying to reach the Petitioner to discuss her case with her. After calling the Petitioner six or seven times and failing to reach her, trial counsel called her father. The Petitioner called trial counsel the following day. He told her that her case was set for trial and asked what she

---

[1] We note that the dispatcher is referred to as Rob Burg, Ron Burg, Rob Hurd, Rob Herd, and Rob Byrd throughout the record on appeal.

wanted to do. He testified that the Petitioner responded, "I just want to get it over with." He stated that the Petitioner never asked for his opinion on whether she should plead guilty or go to trial.

Trial counsel confirmed that he was aware that intent is an element of theft. He explained that despite the Petitioner's claim that she did not have the requisite intent to be convicted of theft, there were several reasons why he did not advise her to proceed to trial. He stated that the State would cross-examine the Petitioner and "infer that she had an intent possibly to do something different than what she said." Trial counsel also said that when "dealing with [the Petitioner] you never knew what you were going to get" and that he was "very much worried… about what kind of witness she would be[.]" He testified that he would have been happy to take the Petitioner's case to trial if she had chosen to do so

Trial counsel never spoke with Mike Glozier, the owner of the truck the Petitioner took. Trial counsel testified that from talking to a public defender about the case, he found out that Mr. Glozier was "very upset" about his truck being taken. He also learned that Mr. Glozier "didn't know the circumstances" surrounding the theft of his truck.

In regards to the burglary charge, trial counsel stated that he spoke to the Petitioner about the incident and that she told him it was "all just a mix-up." He said that his investigation "showed that [the State] couldn't prove that she had removed anything from the truck," just that she had "spent time going through the truck apparently looking for something." Trial counsel testified that the Petitioner never told him that she thought she had gotten permission from the truck's owner to enter it. Therefore, he never spoke with Rob Byrd, the dispatcher whose truck the Petitioner allegedly had permission to enter. He said he "got the impression from talking to [the Petitioner] that she was intoxicated and possibly on drugs[,] and she didn't really recall what went on."

On cross-examination, trial counsel testified that he received discovery from the State on both charges and that he shared this discovery with the Petitioner. He confirmed that the Petitioner's trial was set for the day after the guilty plea hearing, November 5, 2019. Trial counsel testified that he went over the Plea of Guilty and Waivers of Trial, Jury, and Appeal with the Petitioner. He stated that he told the Petitioner she had the right to go to trial and that the Petitioner indicated she wanted to enter a plea. He said that on the day of the guilty plea hearing, the Petitioner seemed "fine" and that he did not feel she was being pressured into entering the plea. Trial counsel stated that during the hearing, the Petitioner never indicated, to him or the court, that she did not want to enter the plea. The Petitioner informed trial counsel that she had no desire to go to trial. He said the Petitioner never contacted him after the hearing to inquire about withdrawing her plea.

- 5 -

Mike Glozier's testimony largely echoed that of his previous testimony. Mr. Glozier recounted going into Coop's Poolroom, hearing his truck engine start, and seeing his white 1993 GMC truck leaving the parking lot. Police later alerted him that they had found his truck on Browning Street, parked in front of the Petitioner's father's rental property. However, the truck found on Browning Street was not Mr. Glozier's truck but was the same make, model, and color.

On cross-examination, Mr. Glozier affirmed that his truck had a "Tommy lift" attached to it to lift equipment, and the truck found on Browning Street did not.

Jeff Harrison, the Petitioner's father, reiterated that he had loaned his white 1993 GMC truck to Richard Weatherly, who had then refused to return it. The Petitioner went to retrieve his truck from Coop's Poolroom and informed him that she had parked his truck at his rental property on Browning Street. Mr. Harrison testified that his truck and the truck parked on Browning Street were both white 1993 GMC trucks with missing paint. He did not immediately recognize that the truck the Petitioner parked on Browning Street was not his truck.

Mr. Harrison affirmed that he had spoken to trial counsel about the Petitioner's case. He explained that he informed trial counsel "about there being two trucks," and trial counsel told him that the district attorney knew such information. On cross-examination, Mr. Harrison testified that his truck did not have a Tommy lift on it, but Mr. Glozier's did.

The Petitioner testified she went to Coop's Poolroom to retrieve her father's truck after being informed that it was parked there. She drove the truck to Browning Street and asserted that she did not realize the truck actually belonged to Mr. Glozier until she was arrested, but she did concede that she noticed the Tommy lift on the back of the truck. When asked about her burglary conviction, the Petitioner reiterated that her friend, Rob Byrd, told her he had left "cigarettes and a bag of chips and some Vienna sausages" in his unlocked truck for her outside of the municipal building where he worked. The Petitioner opened a different unlocked truck containing guns and bullets but testified that she did not remove anything from the truck.

The Petitioner alleged that the only opinion trial counsel gave her regarding her case was in response to her informing him that "this isn't theft over $1000. This is joyriding." Trial counsel informed her that such a statement was her "opinion, not a fact." The Petitioner testified that she was unable to contact trial counsel while she was incarcerated before trial because he "ha[d] no minutes on his phone so you can't call him from the jail." She alleged that she entered guilty pleas because trial counsel "mentioned that [she] was going to get three years in prison" if she didn't plead guilty. When asked if she entered the guilty pleas willingly and knowingly, the Petitioner responded that she just "said the right

thing" because she "didn't want to go to prison." She claimed that trial counsel told her "to take the plea" if she "d[id]n't want to go to prison[.]" When asked why she pleaded guilty to the burglary charge if she did not intend to steal anything from the truck, the Petitioner claimed that prison guards had "locked [her] up and turned [off] her water[,]" forced her to "use water out of the toilet to make coffee[,]" and "served [her] some bleach[.]"

On cross-examination, the Petitioner affirmed that she was familiar with "some of" the criminal justice process. She conceded that she had previously pleaded guilty to vandalism under $1000. The Petitioner acknowledged that she recognized the plea agreement from that matter and her signature on the document. She further agreed that the guilty plea documents she signed in the instant case and the documents she signed in the vandalism case were "the same form[.]" The Petitioner testified that trial counsel had forced her to plead guilty by intimidating her with "words" and "prison[.]" She conceded that she never spoke with trial counsel regarding withdrawing her guilty pleas. The Petitioner alleged that she spoke with other attorneys "on the phone" regarding her guilty pleas, but she "was not even sure" with whom she had spoken.

The post-conviction court subsequently entered a written order denying relief on November 13, 2019. In the order, the court found that the Petitioner had "failed to prove the requirements that her attorney[']s performance was so deficient so as to deprive her of a fair trial." The court further found that there was no "proof in the record to indicate that defense counsel pushed or forced his client to enter a plea under duress" and that "the plea was made knowingly, voluntarily[,] and understandably." The Petitioner filed a timely notice of appeal on December 2, 2019, and this case is now properly before this court for review.

## ANALYSIS

On appeal, the Petitioner asserts that trial counsel was deficient for failing to inform her of the elements of theft and failing to provide the Petitioner with "any thoughts on how she should proceed on going to trial or taking the plea offer[.]" The Petitioner further argues that trial counsel was ineffective for failing to investigate and interview Mr. Glozier, the owner of the white 1993 GMC truck in the theft charge, or Mr. Byrd, the owner of the truck the Petitioner was supposedly looking for at the municipal building. The State responds that trial counsel reasonably investigated the Petitioner's case and that his advice regarding the plea offer was reasonable and did not prejudice her. We agree with the State.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. Tenn. Code Ann. § 40-30-103 (2006). The Tennessee Supreme Court has held:

- 7 -

A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal citations and quotation marks omitted); Frazier v. State, 303 S.W.3d 674, 679 (Tenn. 2010); see Felts v. State, 354 S.W.3d 266, 276 (Tenn. 2011). A post-conviction petitioner has the burden of proving the factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010); Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases. Vaughn, 202 S.W.3d at 116 (internal quotations and citations omitted). In order to prevail on an ineffective assistance of counsel claim, a petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370

(quoting Strickland, 466 U.S. at 694). In order to satisfy the "prejudice" requirement in the context of a guilty plea, the petitioner must show that, but for counsel's errors, he would not have entered his guilty plea and would have proceeded to trial. Serrano v. State, 133 S.W.3d 599, 605 (Tenn. 2004) (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)). Finally, as relevant to the issues herein, the Tennessee Supreme Court has held that "[f]ailure to conduct a reasonable investigation constitutes deficient performance." State v. Burns, 6 S.W.3d 453, 462 (Tenn. 1999).

> Counsel must conduct appropriate investigations, both factual and legal, to determine what matters of defense can be developed. The Supreme Court has noted that the adversary system requires that "all available defenses are raised" so that the government is put to its proof. . . . And, of course, the duty to investigate also requires adequate legal research.

Baxter, 523 S.W.2d at 932-33 (quoting United States v. DeCoster, 487 F.2d 1197, 1203-04 (D.C. Cir. 1973)). In any ineffective assistance of counsel case, however, "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Burns, 6 S.W.3d at 462 (quoting Strickland, 466 U.S. at 691).

We note that "[i]n evaluating an attorney's performance, a reviewing court must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." State v. Burns, 6 S.W.3d 453, 462 (Tenn. 1999) (citing Strickland, 466 U.S. at 689). Moreover, "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Strickland, 466 U.S. at 688-89. However, we note that this "'deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting Goad, 938 S.W.2d at 369).

The validity of a guilty plea is a mixed question of law and fact that is reviewed de novo. Lane, 316 S.W at 562. To be valid, a guilty plea must be entered knowingly, voluntarily, and intelligently. Id. (citing State v. Mackey, 553 S.W.2d 337, 340 (Tenn. 1977) superseded on other grounds by rules as stated in State v. Wilson, 31 S.W.3d 189, 193 (Tenn. 2000); North Carolina v. Alford, 400 U.S. 25, 31 (1970); Brady v. United States, 397 U.S. 742, 747 (1970); Boykin v. Alabama, 395 U.S. 238, 242-44 (1969)). "[T]he record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decision was both voluntary and knowledgeable, i.e., that he has been made aware of the significant consequences of such a plea[.]" Mackey, 553 S.W.2d at 340; See Tenn. R. Crim. P. 11(b)(1). When determining whether a guilty plea was knowingly, voluntarily,

and intelligently entered, the court must consider "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Lane, 316 S.W.3d at 562 (quoting Grindstaff, 297 S.W.3d at 218). If a guilty plea is not knowingly, voluntarily, and intelligently entered, then the defendant has been denied due process, and the guilty plea is void. Id. (citations omitted).

Applying the above law to the instant case, we conclude that the Petitioner is not entitled to relief. In the context of a guilty plea, trial counsel's effectiveness is only relevant to the extent that it affects the voluntariness of the plea. Ford v. State, No. E2018-00702-CCA-R3-PC, 2019 WL 1220790, at *3 (Tenn. Crim. App. Mar. 14, 2019). In the instant case, the Petitioner asserts that her pleas were not knowing and voluntary because trial counsel did not inform her of the elements of theft. The Petitioner argues that "she would not have pled guilty and insisted on going to trial" if trial counsel had done so.

In denying the petition, the post-conviction court found that the only allegations in the record of the Petitioner being forced to enter guilty pleas was "that she was told what she could be facing if she went to trial." Though the Petitioner claimed in her petition for post-conviction relief that she had a "history of mental and emotional problems," the post-conviction court found that "there was no evidence introduced as to what any of the mental or emotional problems might be." The post-conviction court discredited the Petitioner's claims that she had been served bleach or forced to make coffee from toilet water. The post-conviction court also found that there was "no evidence in the record of the guilty plea that the advice regarding the guilty plea did not meet with the appropriate standards." The record reflects that the Petitioner understood the terms of her plea agreement when she entered the plea. At the guilty plea hearing, the Petitioner indicated that she understood the plea agreement and was satisfied with trial counsel's performance during her plea colloquy. At the post-conviction hearing, trial counsel testified that he had gone over the guilty plea forms and waivers with the Petitioner. He further testified that the Petitioner indicated she wanted to enter a plea rather than go to trial, which was scheduled for the day after the plea hearing. The Petitioner also conceded that she was familiar with "some of" the criminal justice process and had entered a guilty plea prior to the instant case. She acknowledged that the plea documents she signed previously were the "same forms" as the ones in the instant case. Nothing in the record suggests that trial counsel's advice regarding the Petitioner entering guilty pleas ineffective assistance. Because the Petitioner has failed to establish deficient performance, she is not entitled to relief.

The Petitioner finally contends that trial counsel was deficient for failing to investigate and interview Mr. Dozier and Mr. Byrd. The Petitioner contends that these deficiencies caused her prejudice because trial counsel did not offer a "workable theory" of her case. At the hearing, trial counsel testified that he did not interview Mr. Glozier but spoke with the Petitioner's father and a public defender about him. He learned that Mr.

Glozier was "very upset" about the theft of his truck and "didn't know about the circumstances" of the theft. Trial counsel also testified that the Petitioner never told him that she had permission from Rob Byrd to enter his truck, so trial counsel never interviewed him. The post-conviction court obviously credited trial counsel's testimony regarding why he did not interview Mr. Glozier or Mr. Byrd. Based on our review of the record, we cannot conclude that trial counsel's investigation fell below an objective standard of reasonableness. See Goad, 938 S.W.2d at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). The Petitioner has not demonstrated prejudice arising from trial counsel's alleged deficiencies and is therefore not entitled to relief.

## CONCLUSION

Based upon the foregoing reasoning and analysis, we affirm the judgment of the post-conviction court.

_____
CAMILLE R. MCMULLEN, JUDGE